Peggy A. Tomsic (3879)
 tomsic@mgpclaw.com
Christine T. Greenwood (8187)
 greenwood@mgpclaw.com
Jennifer Fraser Parrish (11207)
 parrish@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiff Planned Parenthood
 Association of Utah

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PLANNED PARENTOOD ASSOCIATION OF UTAH, a Utah non-profit corporation,** | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **Plaintiff,** | |
| **v.** | |
| **GARY R. HERBERT, in his official capacity as Governor of THE STATE OF UTAH; and JOSEPH K. MINER, M.D., in his official capacity as the Executive Director of THE UTAH DEPARTMENT OF HEALTH, a department of the government of THE STATE OF UTAH,** | |
| | **Case No.    2:15-CV-00693-CW** |
| **Defendants.** | **Honorable   Clark Waddoups** |

Plaintiff Planned Parenthood Association of Utah ("Plaintiff" or "PPAU") alleges and complains, against Defendants Gary R. Herbert ("Governor Herbert"), in his official capacity as Governor of the State of Utah, and Joseph K. Miner, M.D. ("Dr. Miner"), in his official capacity as the Executive Director of the Utah Department of Health ("UDOH"), a department of the government of the State of Utah (collectively, "Defendants" or the "State"), as follows:

## NATURE OF THE CASE

1.      PPAU files this action pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the First and Fourteenth Amendments to the United States Constitution.  For over forty-five years, PPAU has been an integral provider of reproductive health services to women, men, and teens of Utah, including providing education and testing to prevent the spread of sexually transmitted diseases ("STDs"), and education to prevent unwanted pregnancy.  For decades, PPAU has been awarded grants funded by the federal government, including those administered by the State, to further reproductive health education and testing, including through a long-standing relationship with UDOH.

2.      On August 14, 2015, without warning and having expressed no prior concerns about PPAU or the services it provides, Governor Herbert directed the agencies of the State of Utah to cease acting as an intermediary for federal grant money going to PPAU for non-abortion related services based solely on unproven allegations by an anti-abortion group of misconduct in other states by affiliates of the national organization of Planned Parenthood Federation of America (the "National

2

Organization") (collectively, with its affiliates, "Planned Parenthood").  Governor Herbert

has therefore singled out PPAU for this unfavorable treatment, not based on any actual,

or even alleged, misconduct by PPAU itself, but because of its association with Planned

Parenthood.

     3.    The claims in this case arise in a current political climate that is very

hostile to Planned Parenthood.  At the time of the filing of this complaint, threats of a

complete shut-down of the federal government loom as certain opponents of Planned

Parenthood in Congress are conditioning the approval of the government's operating

budget on the complete revocation of all federal funds to Planned Parenthood, unless

the organization certifies that it will not provide abortions.  Accordingly, Governor

Herbert's decision was motivated solely by animus toward PPAU's constitutionally

protected, privately funded activities --- specifically, PPAU's association with providers

of abortion services, including the  National Organization and its affiliates, PPAU's

advocacy for access to abortion services; and/or PPAU's provision of and/or association

with abortion services, even though PPAU conducts all such activities outside of any

state or federal program and with no funding from those programs.

     4.    PPAU therefore seeks a judgment declaring that the actions of Governor

Herbert, as implemented through UDOH, violate PPAU's rights under the First and

Fourteenth Amendments to the United States Constitution.  As these actions, if allowed

to stand, will imminently and irreparably harm PPAU and the thousands of women, men,

and teens of Utah who rely on PPAU for reproductive health education and testing to

prevent the contraction and transmission of life-threatening infections and diseases,

PPAU also seeks preliminary and permanent injunctive relief.

## THE PARTIES, JURISDICTION, AND VENUE

5.      Planned Parenthood of Utah is a Utah non-profit corporation that provides

comprehensive reproductive health care to approximately 46,000 women, men and

teens each year at health centers located throughout Utah, including in Logan, Ogden,

Heber, Orem, St. George, and four health centers in Salt Lake County.  The care PPAU

provides includes annual wellness exams, birth control counseling and the provision of

all FDA-approved form of contraception, testing and treatment for STDs, screening for

breast and cervical cancer, diagnosis and treatment of abnormal pap tests,

vasectomies, and health education.  PPAU also provides abortions at one of its health

centers in Salt Lake City which are funded solely by private donations.  PPAU sues on

behalf of itself and its patients with regard to Defendants' termination of the pass-

through of federal funding to PPAU for non-abortion reproductive health care as

described below.

6.      Defendant Gary R. Herbert is the Governor of the State of Utah.  In his

official capacity, Governor Herbert is the Chief Executive Officer of the State of Utah.

Governor Herbert maintains an office in Salt Lake County, Utah.  Governor Herbert is

sued in his official capacity.

7.      Defendant Joseph K. Miner, M.D., is the Executive Director of the Utah

Department of Health.  UDOH is a department of the State of Utah created by Utah

Code § 26-1-4.  UDOH is the health, health planning, and medical assistance authority

of the State of Utah and is the sole state agency for administration of federally assisted

state programs or plans for public health, health planning, maternal and child health,

services for children with a disability, and medical assistance.  Utah Code § 26-1-18.

Dr. Miner maintains an office in Salt Lake County, Utah.  Dr. Miner is sued in his official

capacity.

8.      Defendants, and those subject to their supervision, direction, and control,

are responsible for the administration of the federally-funded programs at issue, and

similar programs, whether now-existing or in the future.  The relief requested in this

action is sought against each Defendant, as well as against each Defendant's officers,

employees, and agents, and against all persons acting in cooperation with Defendants,

under their supervision, at their direction, or under their control.

9.      This action raises questions under the Constitution of the United States

and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief

pursuant to 28 U.S.C. § 1331.

10.      Further, PPAU's claim for declaratory and injunctive relief is authorized by

28 U.S.C. §§ 2201 and 2201, and by Rules 57 and 65 of the Federal Rules of Civil

Procedure, and by the general legal and equitable powers of this Court.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all

Defendants reside in this District and the State of Utah.  Venue is also proper because a

substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

## GOVERNOR HERBERT'S DIRECTIVE

12.     On August 14, 2015, Governor Herbert issued a statement regarding PPAU (the "Directive"), wherein Governor Herbert "instructed state agencies to cease acting as an intermediary for pass-through federal funds to Planned Parenthood [of Utah]."

13.     Governor Herbert's Directive was issued in response to recent (false) accusations made in the media by an anti-abortion organization that purport to relate to fetal tissue donation programs conducted by other affiliates of the National Organization in other states --- not PPAU.

14.     In a press conference on August 17, 2015, Governor Herbert stated, "We now have video where they're selling fetus body parts for money and it's an outrage and the people of Utah are outraged.  I'm outraged.  So for coloring outside the lines, Planned Parenthood [of Utah] forfeits some of their benefits."

15.     On August 19, 2015, Governor Herbert joined Mia Love, one of Utah's congressional representatives, and approximately three-hundred other attendees at a protest held in the rotunda of the Utah State Capitol, to ask lawmakers to defund Planned Parenthood.  At the protest, Governor Herbert stated, "I'm here today to add my voice to yours and speak out on the sanctity of life . . . ."  He further stated, "The thing I find most appalling is the casualness, the callousness . . . the lack of respect, the lack of sensitivity to the unborn . . . ."

6

16.     However, the accusations made in the media against the <u>other</u> affiliates of Planned Parenthood have not been proven, nor do these accusations include any alleged conduct by PPAU, as Governor Herbert himself acknowledged in his August 17, 2015, press conference when he stated that none of the alleged conduct occurred in Utah.

17.     Thus, Governor Herbert knew, and continues to know, that there is no evidence, or even accusation, that PPAU has "colored outside" of any lines, including because PPAU does not participate in any program that provides fetal tissue for scientific research.

18.     Moreover, there has never been any assertion by Governor Herbert, UDOH, or anyone else that PPAU is not qualified to provide the federally-funded reproductive health education and STD testing services to the Utah community that it provides through its relationship with UDOH, or that PPAU has ever abused any federal grant money provided for such services.

19.     Finally, as Governor Herbert himself acknowledged in his Directive, <u>no</u> federal funding to PPAU, whether directly from the federal government or through state agencies such as UDOH, is used to provide abortions.

20.     Instead, the funds affected by Governor Herbert's Directive, which primarily include funding through contracts between PPAU and UDOH, are shown in a list available through a hyperlink included in the Governor's statement:

a.      Funding to support the "Utah Abstinence Education Program," the purpose of which is to provide abstinence education as a means of promoting abstinence from sexual activity among Utah youth.  This program is an afterschool program requiring parental permission to enroll.

b.      Funding to support the "Personal Responsibility Education Program," the purpose of which is to educate adolescents on both abstinence and contraception to prevent pregnancy and STDs, while also providing education into adulthood preparation topics such as positive self-esteem and health relationship dynamics, educational and career success, and life skills such as goal-setting, decision making, communication skills, and stress management.  This program is also an afterschool program requiring parental permission to enroll.

c.      Funding to support a program in collaboration with the Communicable Disease Prevention Program for STD Testing in the State of Utah, wherein federal funds are used to pay the Utah Public Health Laboratory for specimens to be tested for STDs such as chlamydia and gonorrhea (the "Targeted STD Testing Funds").

d.      Funding to support a program to improve timeliness, accuracy, and completeness of STD reporting and surveillance data, sometimes referred to as the "STD Surveillance Network."

21.     The Directive also purports to affect reimbursements made to PPAU for pregnancy and STD testing for victims of rape or sexual assault through the Utah Office for Victims of Crime.

22.     Thus, the funds affected by Governor Herbert's Directive are unrelated to abortion and/or to the donation of fetal tissue for scientific research (except that the programs funded are intended to, and have the effect of, decreasing abortions).

23.     Instead, Governor Herbert's Directive was issued solely in retaliation for PPAU's prior protected and privately funded activities --- specifically, that PPAU provides, associates with, and/or advocates for access to abortion, even though PPAU conducts all such activities outside of any state or federal program and does not use funding from any state or federal program for these activities.

**IMPLEMENTATION OF GOVERNOR HERBERT'S DIRECTIVE BY UDOH**

24.     On September 8, 2015, and pursuant to Governor Herbert's Directive, UDOH provided PPAU with a thirty-day written notice of termination of its contract for the Utah Abstinence Education Program, which was not set to expire until September 30, 2016, and would be renewable for additional years at the time of expiration. Accordingly, this contract will terminate on October 8, 2015.

25.     On September 8, 2015, the UDOH also provided PPAU with a notice that UDOH would cease accepting funds from the Centers for Disease Control and Prevention (the "CDC") for the STD Surveillance Network contract after September 29, 2015, when such funds would otherwise be available through September 29, 2018.

9

Upon information and belief, UDOH's statements were not true as it will continue to receive this CDC funding; it will just not provide it to PPAU.  This contract will terminate on October 8, 2015.

26.     The contract between UDOH and PPAU for the Personal Responsibility Education Program ("PREP") is set to expire on September 30, 2015, and UDOH has made public statements that it will allow this contract to expire without renewal, per the Governor's Directive.  Upon information and belief, UDOH would have renewed the contract for PREP for additional years, but for Governor Herbert's Directive.

27.     PPAU has also been informed by UDOH that reimbursement for specimens sent to the Utah Public Health Laboratory for STD testing will only continue to December 31, 2015, due to Governor Herbert's Directive.  Upon information and belief, UDOH would also have provided PPAU with additional years of federal funding to pay the Utah Public Health Laboratory for specimens to be tested for the Communicable Disease Prevention Program for STD Testing in the State of Utah, but for Governor Herbert's Directive.

28.     All of the programs above are funded by the federal government, and grant recipients are selected based upon criteria established by the federal government. By contract, the State of Utah has agreed to administer these programs on behalf of the federal government.  These programs are not funded by Utah taxpayer dollars.

## THE IMPACT OF DEFENDANTS' ACTIONS

29.     Defendants' actions will cause irreparable harm to PPAU and its patients.

30.     The Utah Abstinence Education Program and the Personal Responsibility Education Program are intended to reduce pregnancy and risky sexual behavior among teens, while increasing school performance within identified high risk communities. Approximately 152 students (and their parents) are and/or are expected to be signed up for these critical programs during the current school year.  PPAU cannot be replaced in running these programs, including because these programs use the highly successful Wyman Teen Outreach Program[tm] ("TOP[tm]") curriculum, and PPAU is the only organization certified to replicate or teach the Wyman TOP[tm] curriculum in Utah. Accordingly, the Defendants' actions threaten to irreparably harm PPAU's ability to serve these high-risk teens and their parents, and to prevent these teens from acquiring STDs, which could be life threatening, and from having unwanted pregnancies.

31.     The Targeted STD Testing Funds program is intended to target groups for Chlamydia and Gonorrhea testing and treatment that have been identified as high risk for contracting these diseases:  females between the ages of 15-24 (and their partners), and men who have sex with other men.  In the absence of the critical funds provided by this program, PPAU's continued ability to provide STD testing and treatment statewide to all who request it is put at risk.  Moreover, local health departments do not have the capacity nor the expertise to provide Chlamydia and Gonorrhea testing and treatment on the scale that PPAU does (statewide to all who request it, including low income

11

households and those without insurance).  Further, PPAU is much more accessible than any local health department, and patients feel more safe and comfortable seeking these services than from PPAU than from the health department.  If these at-risk groups are now forced to pay for their testing, or make inconvenient trips to the health department because of Defendants' actions, many won't get tested, and Chlamydia and Gonorrhea rates will go up.  Further, the lack of prompt care and evening and weekend hours will cause other PPAU patients to forego services altogether.  Women who have to wait or travel for family planning services or who forego service entirely will undoubtedly experience increased risk of unintended pregnancy, sexually-transmitted infection, and undetected cancer.  Plus, untreated Chlamydia can cause Pelvic Inflammatory Infections which can lead to infertility in women.   Accordingly, Defendants' actions threaten to irreparably harm PPAU's ability to serve these high-risk groups by preventing the spread of STDs and preventing other related injuries such as infertility.

   32.    The STD Surveillance Network program is a pilot project between PPAU and UDOH intended to improve reporting of STD testing results by building communication infrastructure within the State of Utah, with the goal of decreasing the spread of these diseases in the community.  PPAU cannot be replaced as a partner for this project because, in UDOH's own words, ""PPAU is the ideal candidate" for this project because of the quantity and quality of the services provided by PPAU.  Even if UDOH could find a new partner, it will essentially have to start over, or at best, UDOH will have to re-do much of the work it had already accomplished with PPAU over the last

two years.  Accordingly, the State's Action threatens to irreparably harm PPAU's ability to serve the community by helping UDOH build the data communication infrastructure to prevent the spread of STDs in Utah.

33.     Defendants' actions also threaten to irreparably harm PPAU's ability to serve the victims of rape and sexual assault, and to prevent these patients from being tested and receiving care for STDs, which could be life threatening, because fewer victims will report for this critical follow-up testing if they cannot get this testing done at PPAU, which has a reputation in the community of treating these patients with respect and without judgment.

34.     Finally, PPAU's reputation, and its ability to partner with local health organizations, is critical to its success, and its continued ability to fulfill its mission. Governor Herbert has made false public statements that PPAU has been engaged in illegal activities related to fetal tissue donation, and has instructed state agencies to terminate state-administered federal funds to PPAU because of this alleged wrongdoing.  These false statements, and UDOH actions attendant these statements, threaten to destroy PPAU's reputation in the community that it has worked so hard to build over almost 50 years in Utah.  Without its reputation intact, PPAU will no longer be able to function as it has in the past, and to serve the community as it has in the past.

35.     In addition to the ability to successfully collaborate with other health care organizations, PPAU's reputation is also critical to its continued ability to raise funds through private donors, which is necessary for PPAU to keep its costs low, and to meet

13

its mission of providing statewide services to all who request those services, including those without insurance.  Donors will be less likely to provide money to PPAU if they believe, as the Governor has stated, that PPAU has "colored outside the lines."

36.     Finally, for PPAU to successfully meet its mission, it must continue to have the reputation with patients in the community that it is an organization that can be trusted.  Many patients choose PPAU over other health care centers because they trust that PPAU will offer nonjudgmental, compassionate, and comprehensive care, and that PPAU will provide them with information they need to plan their families and protect their health in a safe environment.  If patients believe that PPAU has engaged in criminal behavior, or acted improperly, they are less likely to believe PPAU is a safe environment in which to receive the sensitive education and care related to their reproductive health.

37.     Thus, PPAU and its patients have no adequate remedy at law.

**CLAIMS FOR RELIEF**

**COUNT 1:  VIOLATION OF EQUAL PROTECTION UNDER
THE FOURTEENTH AMENDMENT**

38.     Plaintiff incorporates by this reference the allegations set forth above.

39.     Defendants' actions in singling out PPAU for unfavorable treatment without adequate justification violates PPAU's rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

14

40.     As the result of Defendants' violation of PPAU's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, PPAU is entitled to the declaratory judgment set forth in the Prayer for Relief.

41.     As a result of Defendants' violation of PPAU's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, PPAU has and will continue to suffer irreparable harm and is entitled to the preliminary and permanent injunctive relief set forth in the Prayer for Relief.

42.     As a result of Defendants' violation of PPAU's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, PPAU is entitled to recovery its costs of suit, including reasonable attorney fees, and such other relief as the Court deems appropriate.

### COUNT 2:  UNCONSTITUTIONAL PENALTY ON CONSTITUTIONALLY PROTECTED ACTIVITY UNDER THE FIRST AMENDMENT

43.     Plaintiff incorporates by this reference the allegations set forth above.

44.     Defendants' actions violate the rights of PPAU as guaranteed by the First Amendment to the United States Constitution by imposing a penalty based on its speech and/or associations without adequate justification.

45.     As the result of Defendants' violation of PPAU's constitutional rights under the First Amendment, PPAU is entitled to the declaratory judgment set forth in the Prayer for Relief.

46.     As a result of Defendants' violation of PPAU's constitutional rights under the First Amendment, PPAU has and will continue to suffer irreparable harm and is

15

entitled to the preliminary and permanent injunctive relief set forth in the Prayer for Relief.

47.     As a result of Defendants' violation of PPAU's constitutional rights under the First Amendment, PPAU is entitled to recover its costs of suit, including reasonable attorney fees, and such other relief as the Court deems appropriate.

### COUNT 3:  UNCONSTITUTIONAL PENALTY ON CONSTITUTIONALLY PROTECTED ACTIVITY UNDER THE FOURTEENTH AMENDMENT

48.     Plaintiff incorporates by this reference the allegations set forth above.

49.     Defendants' actions violate the rights of PPAU and its patients as guaranteed by the Fourteenth Amendment to the United States Constitution to provide and access abortion services by imposing a penalty on PPAU for the provision of and/or association with abortion services without adequate justification.

50.     As the result of Defendants' violation of PPAU and its patients' constitutional rights under the Fourteenth Amendment, PPAU is entitled to the declaratory judgment set forth in the Prayer for Relief.

51.     As a result of Defendants' violation of PPAU and its patients' constitutional rights under the Fourteenth Amendment, PPAU has and will continue to suffer irreparable harm and is entitled to the preliminary and permanent injunctive relief set forth in the Prayer for Relief.

52.     As a result of Defendants' violation of PPAU and its patients' constitutional rights under the Fourteenth Amendment, PPAU is entitled to recover its costs of suit,

16

including reasonable attorney fees, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PPAU requests the entry of a judgment in its favor and against Defendants as follows:

1.     A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that Defendants' actions to terminate all state-administered federal funding to PPAU are (1) a violation of PPAU's rights to Equal Protection under the Fourteenth Amendment to the United States Constitution; (2) an unconstitutional penalty on PPAU's protected activities under the First Amendment to the United States Constitution; and (3) an unconstitutional penalty on PPAU's protected activities under the Fourteenth Amendment to the United States Constitution.

2.     A preliminary and permanent injunction enjoining Defendants, without bond, from refusing to act as an intermediary for federal funds which PPAU is otherwise qualified to receive, based on PPAU's association with providers of abortion services, including the National Organization and its affiliates; PPAU's advocacy for access to abortion services; and/or PPAU's provision of and/or association with abortion services.

3.     A judgment awarding PPAU its costs of suit, including reasonable attorney' fees, under 42 U.S.C. § 1988, and such other and further relief to which it may be entitled.

DATED this 28th day of September, 2015.

MAGLEBY & GREENWOOD, P.C.

_____

Peggy A. Tomsic
Christine T. Greenwood
Jennifer Fraser Parrish

Attorneys for Plaintiff Planned Parenthood
  Association of Utah


Plaintiff's Address
Planned Parenthood Association of Utah
654 S. 900 E.
Salt Lake City, Utah 84102